**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| COSENTINO RESEARCH AND DEVELOPMENT S.L.U., COSENTINO S.A.U., C & C NORTH AMERICA, INC. | ) ) ) ) | |
| Plaintiffs, | ) | C.A. No. 6:20-cv-1080 |
| v. | ) ) | |
| CAMBRIA COMPANY LLC, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | | |

## COMPLAINT

Plaintiffs Cosentino Research and Development S.L.U., Cosentino S.A.U., and C & C North America, Inc. (collectively, "Plaintiffs" or "Cosentino") by way of this Complaint against Cambria Company LLC, states as follows:

## THE PARTIES

1. Plaintiff Cosentino Research and Development S.L.U. ("Cosentino R&D" or "Plaintiff") is a Spanish corporation with a principal place of business at Ctra. A334 Baza-Huercal Overa, km 59, Cantoria (Almeria, Andalusia) Spain, 04850, Registered in the Business Register of Almería, Volume 1.422, Sheet 10, Page 37.814.

2. Plaintiff Cosentino S.A.U. is a Spanish corporation with a principal place of business at Ctra. A334 Baza-Huércal Overa, km 59, Cantoria, (Almería, Andalusia) Spain, 04850, Registered in the Business Register of Almería, Volume 90, Sheet 175, Page 2270, 4th Entry.

3. Plaintiff C & C North America, Inc. ("Cosentino North America") is a Delaware corporation with a principal place of business at 355 Alhambra Circle, Suite 1000, Coral Gables, Florida 33134.

4.     On information and belief, Defendant Cambria Company LLC ("Cambria" or "Defendant") is a limited liability company organized and existing under the laws of Minnesota, with a principal place of business at 805 Enterprise Drive East, Suite H, Belle Plaine, Minnesota 56011.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

5.     Cosentino repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

6.     This is an action for patent infringement under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271, that arises at least from Cambria's manufacture, use, importation, sale, and/or offer for sale of certain slabs of artificial stone (combination of filler and polymerized resin) having a veined effect by means of vibro-compression under vacuum produced by a method that infringes United States Patent No. 7,815,827 (the "'827 patent" and/or "the Asserted Patent").

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     On information and belief, Cambria is in the business of manufacturing and selling composite stone slabs and regularly conducts business throughout the United States, including in the State of Texas and this judicial district, by selling composite stone slabs directly to consumers. On information and belief, Cambria derives revenue from the sale to consumers of composite stone slabs.

9.     On information and belief, Cambria offers for sale and sells within the United States and the State of Texas composite stone slabs and products, including quartz countertops, that are produced by an industrial process that infringes certain claims of the Asserted Patent.

10. On information and belief, Cambria is subject to personal jurisdiction in this Court because Cambria has purposefully availed itself of the privileges of conducting business in the State of Texas by seeking the protection and benefits of the laws of the State of Texas. Moreover, Cambria is further subject to personal jurisdiction in the Western District of Texas, consistent with the principles of due process, by virtue of Cambria's above-referenced activities and contacts within the State of Texas, and further because Cambria purposefully availed and avails itself of the privileges of doing business in Texas.

11. In September 2020, Cambria filed four lawsuits in this District asserting patent infringement against two of the Plaintiffs (Cosentino S.A.U. and Cosentino North America), among other defendants. Cambria thereby consented to personal jurisdiction and venue in this Court. *See Cambria Co. LLC v. Cosentino S.A.U., C & C North America, Inc., et al*, Civil Action Nos. 6:20-cv-00894, 6:20-cv-00895, 6:20-cv-00896, 6:20-cv-00897.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, on information and belief, Cambria has placed, and is continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in this District. Cambria, directly or through intermediaries, conducts business in this District, and at least a portion of the acts of infringement and claims alleged in this Complaint have taken place and are continuing to take place in this District.

### THE PATENT-IN-SUIT

13. Cosentino repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

14. On October 19, 2010, the United States Patent and Trademark Office duly and

legally issued to Juan Cruz U.S. Patent No. 7,815,827, titled "METHOD OF PRODUCING SLABS OF ARTIFICIAL STONE AND POLYMERISABLE RESIN HAVING A VEINED EFFECT BY MEANS OF VIBRO-COMPRESSION UNDER VACUUM." The '827 patent is assigned to and owned solely by Cosentino R&D. A true and correct copy of the '827 patent is attached hereto as Exhibit A.

15. Cosentino R&D is the lawful owner of all right, title, and interest in the '827 patent, including the right to sue and to recover for past infringement thereof.

16. Cosentino S.A.U. and Cosentino North America are licensees of the '827 patent and hold interest on the same, including the right to sue and to recover for the past infringement thereof.

17. The '827 patent is valid and enforceable.

18. The '827 patent is generally directed towards a process for manufacturing artificial stone slabs having a veined effect.

## FACTUAL BACKGROUND

19. Cosentino repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

20. Cosentino is a worldwide leader in the design and manufacture of quartz surface composite products. It is the largest producer of quartz composite products in the world. And it is internationally acclaimed for its Silestone® quartz surface products.

21. Research and development are keys to Cosentino's success and provide the necessary cornerstone for its cutting-edge products and services. Cosentino's research, development, and innovation in the engineered stone slab industry have resulted in worldwide recognition and the issuance of numerous patents.

22.     At least one of these patents, the Asserted Patent, provides benefits of improved manufacturing of stone slabs that are especially suitable for situations in which a veined effect imitating a type of veining found in natural stone is needed throughout the depth of the slab and is visible on each face and edge of the slab.

23.     On information and belief, Cambria employs a process to manufacture its composite stone slabs that infringes at least independent claim 1 of the Asserted Patent.

24.     On information and belief, during the term of the Asserted Patent, Cambria has manufactured, offered for sale, sold, used, and/or imported products produced using the claimed process of the Asserted Patent and has engaged in other activities infringing the same.

25.     Based on its own admissions, Cambria deliberately holds itself out as a U.S. producer of artificial stone slabs, including quartz surface products. *See* Cambria's Complaint, WDTX-6-20-cv-00894, ¶ 27.

26.     Upon information and belief, during the term of the Asserted Patent, Cambria has manufactured products produced by the claimed process of the Asserted Patent, including, but not limited to, Cambria's following products: Aberdeen, Armitage, Ashbourne Matte, Beaumont, Bellingham, Bellwater, Berkeley, Berwyn, Big Sur Mist, Black Rock, Bradshaw, Braemar, Bridgewater, Brookvale, Buckingham, Canongate, Carrick, Castlemartin, Chatsworth, Crowndale, Cuddington, Darlington, Dovestone, Fairbourne, Foggy City, Galloway, Hawkridge, Highgate, Huntley, Islington, Kelvingrove, Linwood, Marwell, Mayfair, Montgomery, Nevern, New Brighton, New Quay, Newport, Pendle Hill, Praa Sands, Risegate, Seacourt, Seagrove, Sherwood, Skye, Summerhill, Swanbridge, Torquay, Trafalgar, Warwick, Waverton, Wellington, Wentwood, Weybourne, Windermere, Wisley. These products are collectively referred to as the "Accused Products" hereinafter.

27.     Upon information and belief, and as illustrated by the product photographs below,[1] the Accused Products are produced by the same fundamental process of one or more claims of the '827 patent.



---

[1] These photographs were obtained on November 6, 2020, from Cambria's website (https://www.cambriausa.com/quartz-colors/#!/).



BERKELEY ™

BERWYN ™

BIG SUR MIST ™

BLACK ROCK ™

BRADSHAW ™

BRADSHAW ™

BRIDGEWATER ™

BROOKVALE ™

Only Available At
The Home Depot



BUCKINGHAM ™

CANONGATE ™

CARRICK ™

CASTLEMARTIN ™

CHATSWORTH ™

CROWNDALE ™

CUDDINGTON ™

DARLINGTON ™



DOVESTONE ™

FAIRBOURNE ™

FOGGY CITY ™

GALLOWAY ™

HAWKRIDGE ™

HIGHGATE ™

HUNTLEY ™

ISLINGTON ™



KELVINGROVE ™

LINWOOD ™

MARWELL ™

MAYFAIR ™

MONTGOMERY ™

NEVERN ™

NEW BRIGHTON ™

NEWQUAY ™



NEWPORT™

PENDLE HILL™

PRAA SANDS™

RISECALE™
Only Available At
The Home Depot

SEACOURT™
Only Available At
The Home Depot

SEAGROVE™

SHERWOOD™
Only Available At
The Home Depot

SKYE™



SUMMERHILL ™

SWANBRIDGE ™

TORQUAY ™

TRAFALGAR ™

Only available at
The Home Depot

WARWICK ™

WAVERTON ™

Only available at
The Home Depot

WELLINGTON ™

WENTWOOD ™




WEYBOURNE ™

WINDERMERE ™



WISLEY ™

28.     Cambria has long been well aware that Cosentino has invested considerable time, effort, and money into research and development for its Silestone® technology, and that Cosentino has diligently pursued and obtained international patent protection for the same, including patent protection for Cosentino's artificial stone slab production methods.

29.     For example, on or about July 20, 2015, Cosentino R&D's '827 patent was listed on the Information Disclosure Statement for Cambria's U.S. Patent Application No. 14/610,172, now U.S. Patent No. 9,289,923. *See* Exhibit B (Image File Wrapper for Application No. 14/610,172) at 111.

30.     Despite notice of Cosentino R&D's patent rights, Cambria continues to manufacture, sell, and offer for sale, the Accused Products.

31.     Cambria's acts have been without license or authority of Cosentino R&D.

<u>**COUNT I**</u>
<u>**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,815,827**</u>

32. Cosentino repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

33. Cambria's acts constitute infringement of the '827 patent under 35 U.S.C. § 271. Cambria has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '827 patent, by, without limitation, performing each and every element of at least one process claim in the Asserted Patent and using, selling, and/or offering for sale the Accused Products created by performing each and every element of at least one process claim in the Asserted Patent. Cambria is therefore liable for infringement of the '827 patent pursuant to 35 U.S.C. § 271(a) and (g).

34. Additionally, or alternatively, on information and belief, Cambria has acted with others—in a joint enterprise, by directing and controlling the performance of others, and/or by conditioning participation in an activity or receipt of a benefit by others upon performance of one or more elements of the process claims in the Asserted Patent and establishing the manner or timing of that performance by others—to directly infringe and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '827 patent, by, without limitation, performing each and every element of at least one process claim in the Asserted Patent and using, selling, and/or offering for sale the Accused Products created by performing each and every element of at least one process claim in the Asserted Patent. These actions of others are thus attributable to Cambria, which is therefore liable for infringement of the '827 patent pursuant to 35 U.S.C. § 271(a) and (g).

35. Cambria's acts of infringement have caused damage to Cosentino, and Cosentino is entitled to recover damages in an amount subject to proof at trial.

36. Cosentino has been, and continues to be, damaged and irreparably harmed by Cambria's infringement, which will continue unless Cambria is enjoined by this Court.

37. On information and belief, Cambria knew or should have known of the '827 patent at least since October 19, 2010, when the patent issued. Cosentino and Cambria are direct competitors, and Cambria knew or should have known about Cosentino's patents related to manufacturing stone slabs having a veined effect.

38. On or about July 20, 2015, Cosentino R&D's '827 patent was listed on the Information Disclosure Statement for Cambria's U.S. Patent Application No. 14/610,172, now U.S. Patent No. 9,289,923. *See* Exhibit B (Image File Wrapper for Application No. 14/610,172) at 111. Thus, on information and belief, Cambria knew of Cosentino R&D's '827 patent, and its infringement is, and will continue to be, willful and deliberate.

39. Cosentino's current infringement positions are based upon reasonable information and belief. Cosentino anticipates collecting additional evidentiary support through the discovery process. Cosentino reserves the right to assert any claims of the '827 patent against any additional infringing product(s) identified during the discovery process.

40. Cambria's Accused Products infringe, literally or under the doctrine of equivalents, at least claim 1 of the '827 patent, which recites:

> 1. A process for manufacturing artificial stone slabs having a veined effect comprising the following steps:
>
> (a) grinding different materials of varied granulometry so as to form a filler;
>
> (b) obtaining a composition comprising a polymerizable and thermosetting resin;
>
> (c) mixing the filler of step (a) with the composition of step (b) so as to obtain a homogeneous mixture;

(d) transporting the homogeneous mixture of step (c) by means of a belt to a distributor;

(e) discharging, from the distributor to a mould, an amount of said mixture necessary for making a slab according to the dimensions of the mould;

(f) protecting the mixture with one of a paper and an elastomer;

(g) moulding and pressing the mixture in each mould by compaction using vibro-compression under vacuum;

(h) hardening, by polymerizing the resin in the resulting molded and pressed mixture of step (g) by means of heating in an oven;

(i) cooling, calibrating, polishing and cutting said slab;

wherein a coloring agent is incorporated in step (c) during mixing; during transporting in step (d) or in the distributor itself; or during step (e); and said coloring agent is incorporated by injecting in liquid form under pressure, such that the obtained slab has veins of said coloring agent distributed throughout the slab such that the vein would be visible throughout a cross-section of the slab; and

wherein the mixing step (c) is of a duration so as to cause the filler to absorb the resin, and further, after incorporation of the coloring agent and the vibrocompression  process, results in the obtained slab having veins of said coloring agent distributed throughout the slab such that the vein would be visible throughout a cross-section of the slab.

41.     On information and belief, Cambria's Accused Products are manufactured artificial stone slabs having a veined effect. By way of example, Cambria uploaded a video to its YouTube channel, titled "The Cambria Process," that describes the industrial process Cambria undertakes to produce its processed slabs that simulate natural stone. *See* The Cambria Process, YOUTUBE, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be (2019).

42.     On information and belief, Cambria grinds different materials of varied granulometry so as to form a filler. Cambria touts that it "is privileged to work with quartz." *See* Our Commitment to Sustainability, CambriaUSA, https://www.cambriausa.com/sustainability/#!/. By way of example, Cambria discloses that its process includes "[m]ining quartz particles through

crushed stone (versus extracting full slabs from the earth)." *See* Process, CambriaUSA, https://www.cambriausa.com/sustainability/#!/; *see also* The Cambria Process, YOUTUBE, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.

43. On information and belief, Cambria obtains a composition comprising a polymerizable and thermosetting resin. By way of example, Cambria's website states that its quartz slabs contain "pure natural quartz with a small amount of pigments and resin." *See* Cambria Frequently Asked Questions, CambriaUSA, https://www.cambriausa.com/faq/#!/. On information and belief, Cambria's resin is a polymeric thermoset resin.

44. On information and belief, Cambria mixes the filler of step (a) with the composition of step (b) so as to obtain a homogenous mixture. On information and belief, as part of Cambria's process, the crushed or ground material filler is homogeneously mixed with the resin composition in a mixer to obtain a homogenous mixture. By way of example, in 2019, NPR reported on Cambria's process after touring its facility in Minnesota, noting that "workers [in the facility] combine quartz, pigments and a binder (the resin acts as binder). The mixture gets spread out onto what looks like a giant baking sheet, then goes through a machine that vibrates the material in a vacuum to remove any voids. This produces a soft, compressed slab that feels almost like cookie dough. It hardens when it gets heated, then cooled and polished." Nell Greenfieldboyce, 'There's No Good Dust': What Happens After Quartz Countertops Leave The Factory, NPR, Dec. 2, 2019, https://www.npr.org/sections/health-shots/2019/12/02/782958005/there-s-no-good-dust-what-happens-after-quartz-countertops-leave-the-factory. By way of further example, Cambria shows this homogenous mixture on its YouTube channel, shown in the following screenshot. *See* The Cambria Process, YouTube, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.



45.     On information and belief, Cambria transports the homogenous mixture of step (c) by means of a belt to a distributor. By way of example, Cambria shows transporting the homogenous mixture on a conveyor belt from the mixer towards the distributors, shown in the following screenshot. *See* The Cambria Process, YouTube, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.



46.     On information and belief, Cambria discharges, from the distributor to a mold, an amount of said mixture necessary for making a slab according to the dimensions of the mold. By way of example, Cambria shows this step of its process—discharging the mixture into a mold—in its process overview video, shown in the following screenshots. *See* The Cambria Process, YouTube, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.





47.     On information and belief, Cambria protects the mixture with one of a paper and an elastomer. By way of example, Cambria shows protecting the mixture with one of a paper and

an elastomer as the mold enters the curing furnace, shown in the following screenshot. *See* Marty Davis Interview with Fox Business, Fox Business Network, https://video.foxbusiness.com/v/6083704435001/.



48.     On information and belief, Cambria molds and presses the mixture in each mold by compaction using vibrocompression under vacuum. By way of example, Cambria shows in its process overview video, a Bretonstone® Jumbo press used to press and compact the mixture in the elastomeric mold by vibrocompression under vacuum, shown in the following screenshot. *See* The                     Cambria                     Process,                     YouTube, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.



49. On information and belief, Cambria hardens, by polymerizing the resin in the resulting molded and pressed mixture of step (g) by means of heating in an oven. By way of example, Cambria's filled mold proceeds to a curing station, after the vibrocompression operation, in which the mixture is cured via a heating process. *See* Nell Greenfieldboyce, 'There's No Good Dust': What Happens After Quartz Countertops Leave The Factory, NPR, Dec. 2, 2019, https://www.npr.org/sections/health-shots/2019/12/02/782958005/there-s-no-good-dust-what-happens-after-quartz-countertops-leave-the-factory ("The mixture gets spread out onto what looks like a giant baking sheet, then goes through a machine that vibrates the material in a vacuum to remove any voids. This produces a soft, compressed slab that feels almost like cookie dough. It hardens when it gets heated, then cooled and polished."). By way of further example, Cambria shows in its process overview video, the mixture entering a heating oven after the compaction step, shown in the following screenshot. *See* The Cambria Process, YouTube, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.



50.     On information and belief, Cambria cools, calibrates, polishes, and cuts said slab. By way of example, after Cambria's compressed slab is heated and cured, it is "then cooled and polished." *See* Nell Greenfieldboyce, 'There's No Good Dust': What Happens After Quartz Countertops Leave The Factory, NPR, Dec. 2, 2019, https://www.npr.org/sections/health-shots/2019/12/02/782958005/there-s-no-good-dust-what-happens-after-quartz-countertops-leave-the-factory. By way of further example, Cambria shows in its process overview video, the cooling, calibrating, polishing, and cuttings steps, shown in the following screenshots. *See* Marty Davis Interview with Fox Business, Fox Business Network, https://video.foxbusiness.com/v/6083704435001/.





51.     On information and belief, Cambria incorporates a coloring agent in step (c) during mixing; during transporting in step (d) or in the distributor itself; or during step (e). On information and belief, the veining effect visually observed in the Accused Products is visible throughout the slab such that the veins are visible throughout a cross-section of the slab because the coloring agent is incorporated to the mix either during mixing, during transporting the mix to the distributor, in the distributor itself, or during discharging the mix from the distributor.

52.     On information and belief, Cambria incorporates said coloring agent by injecting

in liquid form under pressure, such that the obtained slab has veins of said coloring agent distributed throughout the slab such that the vein would be visible throughout a cross-section of the slab. By way of example, Cambria touts that its "natural quartz and rich designs go all the way through the material." Cambria Frequently Asked Questions, CambriaUSA, https://www.cambriausa.com/faq/#!/; *see, e.g.*, Cambria Edge Finishes, CambriaUSA, https://www.cambriausa.com/edges-finishes/#!/ (shown in the exemplar screenshots below are the following Accused Products: Bellingham, Berkeley, Berwyn, Fairbourne, Galloway, Summerhill, Swanbridge, Wellington, and Windermere respectively).



53.     On information and belief, the mixing step (c) of Cambria's process is of a duration so as to cause the filler to absorb the resin. By way of example, Cambria shows this step of its

process—mixing of a duration so as to cause the filler to absorb the resin—in its process overview video because it shows a homogenous mixture of filler and resin, where the resin is absorbed by the filler granulate, shown in the following screenshot. *See* The Cambria Process, YouTube, https://www.youtube.com/watch?v=TKzpM00XtGY&feature=youtu.be.



54.     On information and belief, Cambria's manufacturing process, after the incorporation of the coloring agent and the vibrocompression process, results in the obtained slab having veins of said coloring agent distributed throughout the slab such that the vein would be visible throughout the cross-section of the slab. By way of example, Cambria touts that its "natural quartz and rich designs go all the way through the material." Cambria Frequently Asked Questions, CambriaUSA, https://www.cambriausa.com/faq/#!/;  *see also supra*, ¶ 52.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Cosentino demands a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Cosentino respectfully requests the Court to enter judgment in its favor and against Cambria holding that:

1)      Cambria has infringed the '827 patent;

2)      Cosentino be awarded royalty or lost profit-based damages together with both pre- and post-judgment interest, adequate to compensate it for Cambria's infringement of the '827 patent, such damages to be determined by a jury;

3)      Cambria, its affiliates, owners, officers, agents, employees, and those persons in active concert or participation with it or any of them, and its successors and assigns, be permanently enjoined from continued infringement of the '827 patent, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products that infringe the '827 patent;

4)      All items that were produced using a process that infringes the '827 patent be delivered to Cosentino or destroyed;

5)      Cambria's infringement has been, and continues to be, willful;

6)      Damages for infringement be trebled as provided for by 35 U.S.C. § 284 for Cambria's willful infringement;

7)      This case be adjudged and decreed exceptional pursuant to 35 U.S.C. § 285 and that Cosentino be awarded its reasonable attorneys' fees, expenses, and costs; and

8)      Cosentino be awarded such other and further relief as this Court deems just and proper.

Dated: November 24, 2020

/s/  *John P. Palmer*
Jeffrey C. Totten
Jennifer H. Roscetti
Anthony J. Berlenbach
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
jeffrey.totten@finnegan.com (application for
admission to be filed)
jennifer.roscetti@finnegan.com (application for
admission pending)
anthony.berlenbach@finnegan.com (application for
admission to be filed)

John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
Jacqueline P. Altman
State Bar No. 24087010
NAMAN HOWELL SMITH & LEE, PLLC
400 Austin Ave., Suite 800
Waco, Texas 76701
palmer@namanhowell.com
powell@namanhowell.com
jaltman@namanhowell.com

*Attorneys for Plaintiffs Cosentino Research
and Development S.LU., Cosentino S.A.U., and C &
C North America, Inc.*